IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| NATASHA MARIE CUSTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 117-111 |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Natasha Marie Custis appeals the decision of the Deputy Commissioner for Operations denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I. BACKGROUND**

Plaintiff protectively applied for DIB in June of 2013, and SSI in September of 2013, alleging a disability onset date of July 6, 2012. Tr. ("R."), pp. 10, 241-52. Plaintiff was twenty-seven years old on her alleged disability onset date and was thirty-one years old at the time the

---

[1]The Court **DIRECTS** the **CLERK** to update Defendant's title on the docket consistent with the caption of this Report and Recommendation. (See doc. no. 15, p. 1.)

Administrative Law Judge ("ALJ") issued the decision under consideration. R. 22, 241. Plaintiff had two previous disability applications denied prior to the current applications under consideration. R. 148, 197, 266, 279, 442. Plaintiff claimed she was disabled based on "mental retardation" and depression. R. 242, 282. Plaintiff graduated high school, after having participated in special education classes, and subsequently participated in vocational rehabilitation classes until she was dismissed from the program. R. 53, 54. Plaintiff had a work history that included jobs as a cashier, custodian, food prep/crew worker, yard worker, and babysitter. R. 17, 284, 288-91, 331-35, 340-47.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 88-147, 157-64, 166-73. Plaintiff requested a hearing before an ALJ, (R. 232-36), and the ALJ held a hearing on August 29, 2016. R. 47-87. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Carroll Crawford, a Vocational Expert ("VE"). Id. On October 5, 2016, the ALJ issued an unfavorable decision. R. 7-28.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date of July 6, 2012, through the date of the administrative decision. (C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).

2. The claimant has the following severe impairments: borderline intellectual functioning and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional

limitations: the claimant is limited to simple, routine, repetitive one or two-step jobs with no more than frequent interaction with the public and coworkers and increased supervision. Thus, the claimant is capable of performing past relevant work as a yard worker. This work does not require performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

5. In the alternative, considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform, (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a), including hand packager, industrial cleaner, and garment sorter, all unskilled jobs with an SVP of 2.[2] Therefore, the claimant was not under a disability, as defined in the Social Security Act, from July 6, 2012, through the date of the ALJ's decision, October 5, 2016 (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

R. 12-22.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in determining Plaintiff's impairments did not meet Listing 12.05B at step three of the sequential evaluation process, and (2) failed to properly formulate an RFC including sufficiently specific work-related limitations consistent with the results of a consultative examination performed in 2014. See Pl.'s Br., doc. no. 12. The Commissioner maintains the administrative decision is supported by substantial evidence. See Comm'r's Br., doc. no. 15.

---

[2]Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, the Dictionary of Occupational Titles ("DOT") lists a specific vocational preparation (SVP) time for unskilled work of 1-2. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) & 416.968(a).

3

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ failed to properly analyze her mental impairments, and thus incorrectly determined Plaintiff is not disabled. In particular, Plaintiff asserts she meets Listing 12.05B. Pl.'s Br., p. 7. Plaintiff further argues the RFC conflicts with the opinion of consultative examiner Sarah K. Small, PsyD, regarding the level of supervision Plaintiff requires to work. Id. at 13-16. As explained below, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A. Plaintiff Failed to Establish a Mental Impairment Satisfying the Criteria of Listing 12.05B.

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter

5

how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.[3] Pertinent to this case, the criterion of 12.05B is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." Id. Examples of adaptive activities include: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Id. § 12.00C(1). To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (*per curiam*); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits

---

[3]The Court's C.F.R. citations are to the 2016 version in effect at the time the ALJ rendered her decision.

under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012) (*per curiam*).

In the context of mental disorders, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

Plaintiff claims she satisfies the requirements of 12.05B because she has a valid "full-scale IQ of 57, creating a presumption of deficits in adaptive functioning, and the record shows that [she] suffers significant deficits in two or more areas, including communication, social/interpersonal skills, academic skills, and work skills." Pl.'s Br., p. 11. Plaintiff's argument fails for at least two reasons. First, Plaintiff relies on the American Psychiatric Association definition of adaptive-skills limitations as set forth in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR). Pl.'s Br., p. 10. The ALJ is not required to follow the guidelines set forth in the DSM. See Cammon v. Astrue, CV 308-0131, 2009 WL 3245458, at *11 (N.D. Ga. Oct. 5, 2009) ("Although the language of Listing 12.05 closely tracks the diagnostic criteria for mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association 4th ed. 1994) ("DSM-IV"), there are differences between the two.") The diagnostic criteria

in the mental disorders listings are not confined to the analysis in the DSM. See id. Thus, the DSM criteria are not dispositive.

Second, even though the ALJ found Plaintiff had a valid full-scale IQ of 57, the ALJ went on to review the record to support the conclusion Plaintiff did not have the requisite deficits in adaptive functioning to meet Listing 12.05B. R. 16-17. The ALJ identified Plaintiff's unsheltered work history the VE classified as unskilled and semi-skilled, including multiple jobs in the fast food industry, housekeeping and janitorial work, and babysitting.[4] R. 16, 55, 61, 82. Plaintiff herself reported she can cook, take care of her personal needs, shop, handle a savings account, and use a computer. R. 17, 65-66, 320-22, 326-27. Plaintiff is also able to use public transportation, and reported she is able to independently perform her activities of daily living such as showering, dressing, and grooming herself. R. 17, 422, 443. Plaintiff is also able to live alone, performing house chores that include cleaning dishes, vacuuming, doing laundry, and she has a driver's license. R. 17, 51, 65-66.

Plaintiff argues her low IQ score entitles her to a presumption of deficits in adaptive functioning, regardless of her claimed disability date falling nearly five years after her twenty-second birthday. R. 249. However, as explained above, that is a rebuttable presumption. Hodges, 276 F.3d at 1269. The ALJ's thorough review of Plaintiff's reported abilities to function independently, including a work history showing Plaintiff's highest earnings in the two years starting with the year she claims she became disabled, (R. 253), and the ability to live alone successfully, (R. 51), belies Plaintiff's assertions. Moreover, even after the consultative examination by Dr. Small in March of 2014 upon which Plaintiff so heavily relies in support of

---

[4]Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, the DOT lists the SVP categorization for unskilled work at 1-2, and for semi-skilled work at 3-4. SSR 00-4p, 2000 WL 1898704, at *3.

8

her claim regarding Listing 12.05B, she presented at Serenity Behavioral Systems in November of 2014 for complaints of depression but reported actively seeking employment, with her last date range of employment as 2013-2014. R. 449, 453. Plaintiff also reported going to the movies, socializing with friends, working, playing with her son, cooking, and using computers. R. 454. Plaintiff was discharged from Serenity approximately three months later because of her failure to attend follow-up appointments. R. 465. The ALJ reviewed and relied on all this information in her written decision. See, e.g., R. 14-17.

Plaintiff offers no viable argument showing she meets Listing 12.05B. Plaintiff's attempt to interpret the facts differently than the ALJ by arguing the proper "context" results in a different result than that reached by the ALJ provides no basis for this Court to reverse or remand. See Pl.'s Br., pp. 11-13. This Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59. That a different result is *possible*, does not mean the Commissioner's decision must be reversed. In sum, the ALJ's conclusion that Plaintiff did not establish disability under Listing 12.05B is supported by substantial evidence.

### B. The RFC Determination Is Supported by Substantial Evidence.

#### 1. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the

9

claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

### 2. **Assigning Weight to Medical Opinions**

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists

10

(on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) and 416.927(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d) and 416.927(d).

### 3. The ALJ's RFC Determination Is Supported by Substantial Evidence.

Plaintiff argues the RFC is "impermissibly vague" because the ALJ gave "great weight" to the opinion of consultative examiner Dr. Small, but then failed to explain why Dr. Small's "contextual descriptions" regarding Plaintiff's limitations were not included in the RFC. In particular, Plaintiff argues the RFC omitted without explanation the opinion that Plaintiff "will likely require close supervision, guidance and assistance." R. 20 (citing R. 445).

In formulating the RFC, the ALJ specifically limited Plaintiff "to simple, routine, repetitive one or two-step jobs with no more than frequent interaction with the public and coworkers and increased supervision." R. 17. The ALJ also specifically acknowledged Plaintiff's assessments for borderline intellectual functioning or mild intellectual disability, and noted Dr. Small's opinion Plaintiff could successfully perform unskilled or semiskilled work under supervision in a sheltered workshop *or* general workforce. R. 20 (citing R. 445)

11

(emphasis added).  The ALJ particularly included a need for "increased supervision" in the RFC.  R. 17.

Although Plaintiff attempts to couch her argument as error by the ALJ to reject Dr. Small's March 2014 opinion regarding the likely need for close supervision, guidance and assistance, she is actually again raising a variation of her "context" argument.  That is, although the RFC *accepted* Dr. Small's opinion Plaintiff needs increased supervision, she faults the ALJ for failing to provide "context as to the degree of increase or level of supervision" Plaintiff requires to work.  Pl.'s Br., p. 14.  She offers no case law supporting the conclusion an ALJ must provide this non-specific "context," but instead relies on the general proposition that a hypothetical presented to a VE that does not account for a claimant's mental limitations requires reversal.  Id. (citing Olsen v. Astrue, 858 F. Supp.2d 1306, 1320 (M.D. Fla. 2012)).  Nor does Plaintiff point to anything in Dr. Small's opinion that explains or otherwise defines the degree of supervision she thought Plaintiff might need.  See Pl.'s Br., pp. 14-15.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).  However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence.  Crawford, 363 F.3d at

1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

Here, the ALJ's hypothetical to the VE specifically included "the need for increased supervision." R. 83. The VE opined not only that Plaintiff could perform her past relevant yard work but also identified other jobs, limited to unskilled work, Plaintiff could perform.[5] R. 83-84. Plaintiff does not present any argument, or otherwise explain, why the need for increased supervision prevents her from performing her past yard work. Turning to the alternative step five finding regarding the existence of other jobs in the economy Plaintiff can perform, Plaintiff points out when her representative suggested increased supervision would be needed once every hour, the VE said it was not likely such a requirement could be accommodated. Pl.'s Br., pp. 14-15; R. 85. Notably, however, there is nothing in the record suggesting or supporting the assertion Plaintiff, a person with mild intellectual disability who previously held a variety of jobs, requires supervision once every hour, particularly when limited to unskilled jobs. Indeed, at the administrative hearing, Plaintiff's counsel conceded the opinions in the record suggesting Plaintiff would require more supervision "don't explain how often it would be required."[6] R. 86.

The ALJ conducted a thorough review of the record in formulating the RFC, including as described in detail above, an unsheltered work history, an ability to independently perform her activities of daily living, and to live alone. R. 12-20. Plaintiff points to nothing in the record that validly supports a conclusion she requires supervision once per hour to perform unskilled work.

---

[5]As previously noted, "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) & 416.968(a).

[6]In reviewing Plaintiff's records, state agency consultant Morgan Kyle, PsyD, opined in March 2014 Plaintiff is "intact for simple two step tasks" but "will require periodic supervision to sustain an ordinary routine." R. 98.

Because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

Although Plaintiff argues for a different interpretation of the record, this Court must uphold the Commissioner's factual findings if a reasonable person would accept the relevant evidence "as adequate to support a conclusion." Martin, 894 F.2d at 1529. Although the conclusions of law to be drawn from the factual record do not enjoy a presumption of validity, Brown, 921 F.2d at 1236, Plaintiff offers no valid legal authority supporting her argument an ALJ must provide or otherwise discuss non-specific "context" when formulating an RFC upon which the disability decision is based. The RFC here is supported by substantial evidence.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 6th day of September, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA